UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLEN BRANTHAFER,               :
                                :CIVIL ACTION NO. 3:14-CV-294
          Petitioner,           :
                                :(JUDGE CONABOY)
          v.                    :(Magistrate Judge Mehalchick)
                                :
STEVEN GLUNT, et al.,           :
                                :
          Respondents.          :
                                :

---

**MEMORANDUM**

Here we consider Magistrate Judge Karoline Mehalchick's Report
and Recommendation (Doc. 18) concerning Petitioner Allen
Branthafer's petition for writ of habeas corpus filed pursuant to
28 U.S.C. § 2254.  Petitioner filed this action on February 1,
2014, challenging his February 16, 2002, conviction for second
degree murder, criminal conspiracy, burglary, robbery, and two
counts of theft by unlawful taking in the Huntingdon County Court
of Common Pleas.  (Doc. 1 at 1; Doc. 18 at 1.)  After reviewing
Petitioner's asserted grounds for relief, the Magistrate Judge
recommends dismissal of Petitioner's action.  (Doc. 18 at 10.)  For
the reasons discussed below, we adopt the Magistrate Judge's Report
and Recommendation as modified, deny the Petition and dismiss this
case.

**I. Background**

The incident leading to Petitioner's conviction took place on
April 17, 2000.  (Doc. 1-1 at 3.)  According to Petitioner, the

facts asserted by the prosecutor at trial were that Petitioner and two others, Thomas Duvall and Christopher Muckle, were in Muckle's apartment with Muckle's girlfriend, Crystal Frederick, drinking and doing drugs when the three men hatched a plan to burglarize a summer home located about thirty miles away. (Doc. 1-1 at 3.) Duvall got his sister, Tammy Beston, to give the three a ride to the remote location. (*Id.* at 4.) She dropped them off and returned home. (*Id.*) The three men broke into the summer residence, took rifles from the house when the burglar alarm went off and, because they were on foot, went in search of a vehicle. (*Id.*) They found a truck at a nearby hunting cabin. (*Id.* at 4.) While attempting to steal the truck, the three were confronted by the owner, Roy Ryen, who was shot and killed. (*Id.*)

They were eventually apprehended, and Duvall and Muckle identified Petitioner as the shooter. (*Id.* at 4-5.) They testified to this at Petitioner's capital murder trial and Ms. Beaston collaborated Petitioner's involvement. (*Id.*) Duvall and Muckle entered into a plea deal and agreed to testify against Petitioner. (*Id.*) After the prosecution rested, Petitioner's trial attorney, Thomas Dickey, called Thomas Skipper and Dustin Christoff who both testified that, while in jail, Duvall admitted to being the actual shooter. (*Id.* at 5.)

As noted above, the jury convicted Petitioner of second degree murder, criminal conspiracy, burglary, robbery, and two counts of

theft by unlawful taking.  He was sentenced to life in prison.
(Doc. 1 at 1.)

Petitioner's conviction and sentence were affirmed on direct
appeal to the Superior Court of Pennsylvania.  (Doc. 18 at 1
(citing *Commonwealth v. Branthafer*, No. 1699 MDA 2003 (Pa. Super.
Ct.)).)  Petitioner filed a Petition for Allowance of Appeal, which
was denied by the Supreme Court of Pennsylvania on December 22,
2004.  (Doc. 18 at 1 (citing *Commonwealth v. Branthafer*, No. 876
MDA 2004 (Pa.)).)

On March 15, 2005, Petitioner filed a *pro se* PCRA petition in
the Huntingdon County Court of Common Pleas.  (Doc. 18 at 2.) In
the Petition, he made nineteen claims of ineffectiveness against
Mr. Dickey.  (Doc. 10-1 at 4-5.)  Shortly thereafter, the trial
court appointed William Tressler as Petitioner's PCRA counsel.
(*Id.*)  Petitioner agreed to accept this representation after the
court advised him at an evidentiary hearing that it was in his best
interest to do so, and the evidentiary hearing was rescheduled.
(Doc. 1-1 at 1.)  Mr. Tressler amended the Petition on May 15,
2006, adding two additional claims of ineffectiveness.  (Doc. 10-3
at 2-3.)  Petitioner also filed a *pro se* motion to amend his
petition asserting three additional claims of ineffectiveness,
bringing the total number of inefectiveness claims involving Mr.
Dickey to twenty-three.  (*See* Doc. 10-2 at 2-3.)

Petitioner asserts that he explained to his PCRA counsel the

reasons Mr. Dickey's performance was deficient, including that Mr. Dickey never met with Petitioner to discuss the case and during trial Mr Dickey placed petitioner at the crime scene and conceded guilt to the underlying felony against Petitioner's wishes. (Doc. 1-1 at 1.) Petitioner contends that he also told Mr. Tressler that the private investigator appointed at the trial level, James Ellis, informed Petitioner while he was in the Bedford County jail that several inmates sent Mr. Dickey statements claiming one of the state's main witnesses confessed to being the shooter and also confessed that Petitioner was not present at the crime scene. (*Id.*)

On May 15, 2006, a second evidentiary hearing was held. (Doc. 1-1.) Mr. Dickey had been subpoenaed by Mr. Tressler and "insinuated that he placed petitioner at the crime scene in an attempt to avoid the death penalty." (Doc. 1-1 at 2.) Petitioner asserts that Mr. Ellis testified to certain matters, including that Petitioner never placed himself at the crime scene. (*Id.*) Petitioner testified that he never consented to Mr. Dickey conceding guilt and Petitioner was never at the crime scene, "everything was explainable if Mr. Dickey had met with petitioner to discuss the case." (*Id.*)

On July 17, 2006, Petitioner filed another motion to proceed *pro se*, reportedly due to his dissatisfaction with Mr. Tressler's handling of the evidentiary hearing. (Doc. 1-1 at 2.) He also

4

filed a motion for discovery that Mr. Dickey possessed. (*Id.*) The motions were granted and, according to Petitioner, the discovery which was turned over contained exculpatory statements from the two witnesses called at trial (Thomas Skipper and Dustin Christoff) which Mr. Dickey failed to elicit while the witnesses were on the stand. (*Id.*)

On March 20, 2008, Petitioner filed a *pro se* brief with attached exhibits and the court notified him that the filing was improper. (Doc. 1-1 at 2.) He sets out the following subsequent series of events:[1]

> The court scheduled an evidentiary hearing to give petitioner an opportunity to place the exhibits on record as evidence before they would be considered attached to a brief. Petitioner requested Mr. Tressler to locate and subpoena the witnesses who made the written statements to Mr. Dickey before they testified at trial for the defense. Petitioner also requested two police officers who authored certain reports in the discovery be subpoenaed as well. Mr. Tressler agreed to locate and subpoena the requested witnesses.
>
> On 01/25/2011, the evidentiary hearing was held. Petitioner agreed prior to the hearing to let Mr. Tressler "Captain the ship" after the court advised petitioner to do so. Mr. Tressler only subpoenaed Mr. Dickey for the hearing. Mr. Tressler

---

[1] Petitioner's recitation is not contradicted by the extensive record (Docs. 9-1 - 9-25; Docs. 10-1 - 10-23) and is repeated here both because it is a succinct summary and because it highlights matters upon which he focuses in this action. This summary will be supplemented as appropriate in the discussion of the issues.

attempted to admit twenty four (24) exhibits into evidence, but was denied due to no witnesses being subpoenaed to verify the contents of the exhibits. However Mr. Dickey admitted that he did possess all the offered exhibits prior to trial. The commonwealth stipulated to the same. Mr. Dickey was questioned as to his strategy during trial when he conceded guilt. Mr. Dickey stated that he was attempting to nullify the jury and get a conviction for burglary.

On 03/21/2011, the court ordered a supplemental brief to be filed. On 05/13/2011, the supplemental brief was filed after both petitioner and Mr. Tressler prepared it together. Petitioner argued the concession of guilt issue after Mr. Dickey offered new evidence at the latest hearing. Mr. Tressler argued the admission of exhibits. Petitioner cited *Cronic* several times.[2] On 09/28/11, the court denied petitioner's PCRA petition. The court concluded that Mr. Dickey was prepared for trial. Also that concession of guilt was to avoid the death penalty and that all exhibits offered at the hearing would not be considered due to the failure to call the witnesses to verify the contents of the exhibits.

(Doc. 1-1 at 2.)

Mr. Tressler filed a notice of appeal to the Superior Court on October 27, 2011. (Doc. 1-1 at 3.) On November 17, 2011, Mr. Tressler filed a Concise Statement of the Errors Complained of on Appeal in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). (Doc. 1-1 at 3; Doc. 10-18 at 2-3.) He raised the following three issues:

---

[2] *United States v. Cronic*, 466 U.S. 648 (1984).

> I. The P.C.R.A. court erred when it found that Defendant failed to meet his burden of proving trial counsel's ineffectiveness when trial counsel at closing argument placed Defendant at the scene of the murder. *See* Opinion dated September 28, 2011 at pages 29-32.
>
> II. The P.C.R.A. court erred when the court denied Defendant's ineffectiveness claim that trial counsel was not prepared for trial. *See* Opinion dated September 28, 2011 at pages 16-23.
>
> III. The P.C.R.A. court erred when it denied Defendant's ineffectiveness claim that trial counsel Dickey failed to object to the playing of the security tape obtained by the police from the Mount Union Sheetz store. *See* Opinion dated September 28, 2011 at pages 25-26.

(Doc. 10-18 at 2-3.)

In the Brief for Appellant filed in the Superior Court of Pennsylvania on January 12, 2012, Mr. Tressler identified one "Statement of Questions Involved": "Did the P.C.R.A. Court commit an error in law when it applied the *Strickland* performance-and-prejudice test?" (Doc. 10-19 at 6.)

By decision of December 24, 2012, the Superior Court concluded that the question Petitioner identified in his brief (his claim that "the PCRA court erred in applying the *Strickland* performance/prejudice test for ineffective assistance of counsel rather than the *per se* ineffective assistance of counsel rule found in *United States v. Cronic*" (Doc. 10-22 at 5)) was not raised before the PCRA court, either in the PCRA petition or in the

7

1925(b) statement and "[t]he failure to raise a claim in a 1925(b) statement results in the waiver of that claim on appeal." (Doc. 10-22 at 5-6 (citing *Commonwealth v. Johnson*, 51 A.3d 237, 247 (Pa. Super. Ct. 2012)).) The Superior Court further stated:

> Additionally, in his petition for relief, Branthafer directed the PCRA court to use the *Strickland* test. *See* PCRA Petition, 3/15/05, at 8. Because Branthafer did not claim the *Cronic* rule was applicable in his petition before the PCRA court, he cannot raise that claim now, for the first time on appeal. *See Commonwealth v. Fletcher*, 986 A.2d 759, 794 (Pa. 2009) (failure to raise a claim before lower court waives issue), Pa.R.A.P. 302(a).
>
> Because Branthafer's sole issue has been waived, he is not entitled to relief.

(Doc. 10-22 at 6.) The Superior Court noted in the margin that

> [o]ur review of the record leads us to agree with both the PRCA court and the Commonwealth that there was no *per se* ineffective assistance of counsel. Rather, counsel's stewardship advanced Branthafer's cause and was likely the difference between a finding of first-degree murder and a possible death sentence and the second-degree murder conviction.

(Doc. 10-22 at 5 n.8.)

On January 21, 2013, Mr. Tressler filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania which the Supreme Court denied on June 27, 2013. (Doc. 1-1 at 3.)

As noted above, Petitioner filed this action on February 1, 2014, challenging his February 16, 2002, conviction for second degree murder, criminal conspiracy, burglary, robbery, and two

counts of theft by unlawful taking in the Huntingdon County Court of Common Pleas. (Doc. 1 at 1.) The Petition raises two grounds for relief: 1) appellate counsel, William Tressler, denied Petitioner effective assistance of counsel when he waived Petitioner's issues for review; and 2) trial counsel, Thomas Dickey, denied Petitioner effective assistance of counsel when he placed Petitioner at the crime scene and conceded guilt. (Doc. 1-1 at 1-5.)

On July 31, 2014, Respondents filed their Answer and Memorandum in Opposition to Petition for Writ of Habeas Corpus. (Doc. 9.) They asserted the Petition should be denied for the following reasons: the Petition fails to articulate cognizable claims (Doc. 9 at 15-17); assuming *arguendo* that the Petition is deemed to raise cognizable claims, Petitioner's claims are procedurally defaulted and ineligible for federal review (*id.* at 18-20); and Petitioner has not presented any basis upon which to excuse procedural default (*id.* at 21-31).

On September 14, 2014, Petitioner filed his reply brief (Doc. 14), arguing his claims support serious violations of constitutional guarantees and are not procedurally defaulted (*id.* at 14). Though difficult to follow, Petitioner seems to support his argument that his claims are not procedurally defaulted with the assertion that *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), allows his ineffective assistance of PCRA counsel claim to provide cause

for default and that prejudice is clearly established with claim two. (Doc. 14 at 17, 27.) Petitioner also maintains that claim two was fairly presented to the Superior Court and Supreme Court of Pennsylvania, asserting that Mr. Tressler presented the same issue in his brief to the Superior Court as he raised in his 1925(b) statement. (Doc. 14 at 28-29.)

Magistrate Judge Mehalchick recommended in her December 23, 2014, Report and Recommendation that the Petition be denied and dismissed with prejudice. (Doc. 18 at 10.) She concluded that Claim One is without merit because Petitioner does not have a constitutional right to effective assistance of PCRA counsel. (Doc. 18 at 4.) She also concluded that Claim Two for ineffective assistance of trial counsel was procedurally defaulted, and Petitioner did not provide a basis to excuse the default. (*Id.* at 6-10.)

Because objections to the Report and Recommendation were due by January 9, 2015, and had not been filed as of that date, the Court reviewed the case under the clear error standard and adopted the Report and Recommendation by Order of January 14, 2015. (Doc. 19.)

Petitioner's filing titled Petitioner's Objection(s) to Report and Recommendation (Doc. 20) was dated January 12, 2015, and docketed in this Court on January 22, 2015. Petitioner's specific objections will be set out in the following discussion. After

allowing Petitioner an opportunity to present evidence that his objections were timely filed, Petitioner did so and the Court reopened the case on April 1, 2015. (Docs. 21, 22, 24.) On July 29, 2015, Respondents filed their response to Petitioner's objections (Doc. 33) after requesting and being granted extensions of time within which to do so (Docs. 27-32). On August 10, 2015, Petitioner filed a reply to the response. (Doc. 35.)

## II. Discussion

### A.  *Standard of Review*

When a petitioner files objections to a magistrate judge's report and recommendation, the reviewing court conducts a de novo review of those portions of the report to which objection is made. 28 U.S.C. § 636(b). To warrant de novo review, the objections must be both timely and specific. *Goney v. Clark*, 749 F.3d 5, 6-7 (3d Cir. 1984). The court may accept, reject, or modify--in whole or in part--the findings made by the magistrate judge. 28 U.S.C. § 636(b)(1). Uncontested portions of the report are reviewed for clear error. *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

### B.  *28 U.S.C. § 2254*[3]

As noted by our Third Circuit Court of Appeals, the Supreme

---

[3] Because Petitioner's Petition, objections to the Report and Recommendation, associated filings, and the procedural history of this case implicate many aspects of § 2254 habeas review, I set out applicable standards in detail.

Court has often said habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). The reasons for restraint exercised by federal courts in reviewing and granting habeas relief are many, including the considerations of comity and federalism. "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). Also, states have a recognized interest in the finality of convictions that have survived direct review within the state court system. *Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). Absent special circumstances, the petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b). If an applicant has the right to raise the questions presented under any available

state procedure, he shall not be deemed to have exhausted the remedies available. 28 U.S.C. § 2254(c). If a claim presented in a habeas § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless

> the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If the state court considers the merits in the alternative or in a summary fashion, the § 2254(d) deferential standard of review applies. *Rolan v. Coleman*, 680 F.3d 311, 319-21 (3d Cir. 2012) (agreeing with sister circuits that "an alternative merits determination to a procedural bar ruling is entitled to AEDPA deference); *Chadwick v. Janecka*, 312 F.3d 597, 605-07 (3d Cir. 2002) (AEDPA deferential standard applies when Pennsylvania Supreme Court rejected claim on the merits without explanation); *Hunterson v. Sabato*, 308 F.3d 236, 246 (3d Cir. 2002) ("summary adjudications are to be subjected to AEDPA standard of review"). "Where a lower state court opinion 'represents the state courts' last reasoned opinion [on the relevant issue],' we 'look through' the higher state court opinion and apply § 2254(d)'s standards to the 'highest reasons opinion.'" *Blystone v. Horn*, 664 F.3d 397, 417 n.15 (3d Cir. 2011); *see also Bond v. Beard*, 539 F.3d 256, 289-

13

90 (3d Cir. 2008).

To exhaust state court remedies, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review procedures."[4]  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  This means that the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  Our Circuit Court has also described "fairly presented" to mean that a petitioner must have presented both the factual and legal substance of his claims in the state court's highest tribunal, *Rolan*, 680 F.3d at 317.  He must do so "in a manner that puts them on notice that a federal claim is being asserted."  *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005).  The allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard*, 404 U.S. at 276-77).  "The Supreme Court has

---

[4]  As noted by Magistrate Judge Mehalchick, "[i]n Pennsylvania, a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction or on appeal from a PCRA court's denial of post-conviction relief."  (Doc. 18 at 5 (citing *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004)).)

instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corrections*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). A petitioner meets his obligations to exhaust his claim "by fairly presenting the claim to the state courts, even if the state courts decline to specifically address that claim." *Jones v. Mooney*, No. 1:13-cv-2526, 2015 WL 4950792, at *9 (M.D. Pa. Aug. 19, 2015) (citing *Dye v. Hofbauer*, 546 U.S. 1 (2005) (per curiam); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004)); *see also Collins*, 742 F.3d at 545 n.10 (citing *Smith v. Digmon*, 434 U.S. 332, 333-34 (1978)). Conversely, "a claim may be exhausted 'if the State's highest court expressly addresses the claim, whether or not it was fairly presented.'" *Foote v. Del Papa*, 244 F. App'x 74, 78 (9th Cir. 2007) (not precedential) (quoting *Casey v. Moore*, 386 F.3d 896, 916 n.18 (9th Cir. 2004)); *see also Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002) (citing *Orr v. Orr*, 440 U.S. 268, 274-75 (1978)) ("there is no point asking whether a state court had a full and fair opportunity to resolve federal constitutional claims . . . when the state court in fact did so); *Moore v. DiGuglielmo*, 489 F. App'x 618, 623 (3d Cir. 2012) (not precedential) (citing, *inter alia*, *Walton v. Caspari*, 916 F.2d 1352, 1356 (8th Cir. 1990) ("A habeas [p]etitioner need not actually have raised a claim in a

state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make a final adjudication actually undertook to decide the claim on its merits in petitioner's case.")).

The petitioner bears the burden of proving exhaustion of all available state remedies. *Bronshtein,* 404 F.3d at 725 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are procedurally defaulted. *See*, *e.g.*, *Lines*, 208 F.3d at 159-60 (*citing McCandless*, 172 F.3d at 260). The district court then analyzes the claims under the procedural default doctrine. *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Our Circuit Court has explained that

> [p]rocedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001); or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state rule, *see McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). Ordinarily, violation of firmly established and regularly followed state

16

> rules . . . will be adequate to foreclose
> review of a federal claim.

*Rolan*, 680 F.3d at 317.

When a state court does not review a claim based on a state procedural rule, the procedural bar applies "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007) (citing *Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). The requirements of independence and adequacy are distinct. *Leyva*, 504 F.3d at 365 (citing *Johnson v. Pinchak*, 392 F.3d 551, 557-59 (3d Cir. 2004)). A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it can not be said to be independent of the merits of a petitioner's federal claims." *Johnson*, 392 F.3d at 557. A rule is "adequate" if "'it was firmly established, readily ascertainable, and regularly followed at the time of the purported default.'" *Leyva*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir. 2001)). Pertinent considerations include whether: "'(1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions.'" *Id.*

(quoting *Jacobs v. Horn*, 395 F.3d 92, 117 (3d Cir. 2005)).

Ordinarily, the "adequacy" of the state procedural rule does not include an inquiry into whether the state erroneously applied its own rule in a particular case--"courts have repeatedly counseled [this] is not a cognizable claim on habeas." *Tillery v. Horn*, 142 F. App'x 66, 68 (3d Cir. 2005) (not precedential) (concluding petitioner conflated "concepts of adequacy and independence of state procedural rule with the correctness of the state court's application of its own law") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1980) ("[F]ederal habeas corpus relief does not lie for errors of state law.")). Reviewing a § 2254 petition, a federal court "ordinarily may not second guess a state court's rejection of a claim on the basis of an independent and adequate state procedural rule." *Logan v. Gelb*, 790 F.3d 65, 70 (1st Cir. 2015) (citing *Coleman*, 501 U.S. at 750). A petitioner's assertion that the Pennsylvania Superior Court improperly deemed his ineffective assistance of counsel claims waived was addressed in *Branch v. Tennis*, Civ. A. No. 07-3532, 2009 WL 1089560, at *8 (E.D. Pa. April 22, 2009):

> It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)); *see* § 2254(a); *Tillery v. Horn*, 142 Fed. App'x 66, 68 (3d Cir. 2005) (reasoning in case where Superior Court found that the petitioner's claims were waived, that the petitioner was "charging

18

> Pennsylvania with the erroneous application
> of its own procedural rule, which courts have
> repeatedly counseled is not a cognizable
> claim on habeas"). This remains true even if
> the state procedural ruling is incorrect.
> *Estelle*, 502 U.S. at 71-72; *see Kontakis v.
> Beyer*, 19 F.3d 110, 117 n.12 (3d Cir. 1994)
> (reminding that "'a state court's
> misapplication is limited to deciding whether
> a conviction violated the Constitution, laws,
> or treaties of the United States." *Estelle*,
> 502 U.S. at 68; *see also Hatcher v. Jackson*,
> 853 F.2d 212, 214 (3d Cir. 1988) (assuming,
> without deciding, that state court
> application of state procedural rule "may be
> so aberrant as to create a due process
> violation").

*Branch*, 2009 WL 1089560, at *8. *Branch* concluded that absent the petitioner's showing that the Superior Court's ruling amounts to violation of federal law, the claims are not cognizable on habeas review. *Id.* Despite these general rules, a reviewing court must keep in mind that there are "'exceptional circumstances in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Rolan*, 680 F.3d at 317 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).

Under the procedural default doctrine, a district court does not reach the merits of a defaulted claim unless the petitioner can show "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the court does not consider the merits. *Coleman*, 501 U.S. at 731. In order to show "cause and prejudice" sufficient to satisfy a state court default, a petitioner must show

the "cause" for his default and "prejudice" attributable thereto. *Werts*, 228 F.3d at 192 (citing *Harris v. Reed*, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). By way of example the Court added that "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable, would constitute cause for this standard." *Id.* (internal citations and quotations omitted). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494; *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."[5]

---

[5] "Currently the Supreme Court treats actual innocence as a gateway for consideration of procedurally defaulted claims." *Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 119 (3d Cir. 2015) (not precedential) (citing *McQuiggin v. Perkins*, ---U.S.—, 133 S. Ct. 1924 (2013); *Schlup*, 513 U.S. at 327-29). *Wright*

*Schlup v. Delo*, 513 U.S. 298, 326 (1995) (quoting *Carrier*, 477 U.S. at 496). It is a stronger showing than that needed to establish prejudice. *Id.* In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the Court of Appeals for the Third Circuit explained the two-step inquiry originally set out in *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004): First, the "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" 510 F.3d at 225 (quoting *Hubbard*, 378 F.3d at 340); second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (quoting *Hubbard*, 378 F.3d at 340).

If a petitioner can meet the "cause and prejudice" or "fundamental miscarriage of justice" standard, his default will be excused and the court may review the merits of the claim presented. *Id.*

## C. Petitioner's Objections

Petitioner specifically raises the following objections to Magistrate Judge Mehalchick's Report and Recommendation (Doc. 20): 1) the factual and legal substance of Petitioner's claim that trial counsel's decision to concede guilt without Petitioner's consent and against his wishes substantially undermined rights afforded by

---

also stated that "[t]he Supreme Court has not yet recognized the existence of a freestanding claim of actual innocence." *Id.* (citing *McQuiggin*, 133 S. Ct. at 1931).

the United States Constitution was technically presented fairly for review (Doc. 20 at 1); 2) PCRA counsel was obligated to advance issues for review on appeal (*id.* at 3); and 3) denial of review of the PCRA Court's decision to deny ineffective assistance of counsel claim would be a fundamental miscarriage of justice (*id.* at 7).[6]

A review of Petitioner's filings indicates that Petitioner's first and third objections relate to his second ground for relief, i.e., that trial counsel denied him effective assistance of counsel by placing him at the crime scene and conceding guilt (Doc. 1-1 at 3), and the second objection relates to his first ground for relief, i.e., that appellate counsel denied petitioner effective assistance of counsel when he waived Petitioner's issues for review (Doc. 1-1 at 1).

## 1. __Ground One: Ineffective Assistance of PCRA Appellate Counsel__

Petitioner's objection related to his first ground for relief

---

[6] Respondents identify six objections in Petitioner's filing: 1) Petitioner argued the factual and legal substance of his "closing argument" trial counsel ineffectiveness claim to the state trial and Superior Courts; 2) the Superior Court "waived review of" Petitioner's closing argument trial counsel ineffectiveness claim; 3) PCRA counsel rendered ineffective assistance of counsel; 4) Magistrate Judge Mehalchick should have found *Martinez v. Ryan* applicable to excuse procedural default; 5) trial counsel's explanation at the PCRA evidentiary hearing for the content of his closing argument lacks any basis in fact in the record; and 6) denial of federal habeas review of the merits of his "closing argument" claim would result in a fundamental miscarriage of justice.  (Doc. 33 at 2.)

The Court's discussion focuses on Petitioner's stated objections and considers Respondents' arguments appropriately.

is difficult to follow and appears to conflate ineffective assistance of PCRA initial review counsel, ineffective assistance of PCRA appellate counsel, and PCRA counsel errors providing "cause" for procedural default. (*See* Doc. 20 at 3-7.) To the extent Petitioner objects to Magistrate Judge Mehalchick's conclusion that Petitioner's ineffective assistance of PCRA counsel claim should be denied (Doc. 18 at 4), his objection is without merit. We agree with Magistrate Judge Mehalchick that a freestanding claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas proceeding. (*Id.* (citing 28 U.S.C. § 2254(I); *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987); *Coleman v. Thompson*, 501 U.S. 722, 755 (1991)).) Therefore, Petitioner's first ground for relief is properly denied. Petitioner's assertion that PCRA counsel's error was cause for the waiver of claims on PCRA review and the Magistrate Judge too narrowly applied law relevant to the waiver issue (Doc. 20 at 6-7) will be addressed in the discussion of Petitioner's second ground for relief.

2. **Ground Two: Ineffective Assistance of Trial Counsel for Placing Petitioner at the Crime Scene and Conceding Guilt to Burglary**

The two objections specifically articulated regarding this ground for relief are that Petitioner fairly presented the claim to State courts (Doc. 20 at 1) and denial of review of this claim would be a fundamental miscarriage of justice (*id.* at 7).

a. **Fair Presentation of Ineffective Assistance of Trial Counsel**

**Claim**

Petitioner asserts that Magistrate Judge Mehalchick erred in determining that he had not fairly presented his claim that trial counsel was ineffective for deciding to concede Petitioner's guilt against his wishes. (Doc. 20 at 1.) Because "fairly presented" means the factual and legal basis of a claim must have been presented in state courts, *see*, *e.g*, *Rolan*, 680 F.3d at 317, and because the legal standard asserted and considered is at the heart of Petitioner's objection, I begin our discussion with the basic standards governing a Sixth Amendment ineffective assistance of counsel claim.

"The governing standard for ineffective-assistance-of-counsel claims emanates from the seminal decision in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Branch v. Sweeney*, 758 F.3d 226, 233 (3d Cir. 2014). *Strickland* set out a two-prong test: a petitioner must demonstrate "(1) that counsel's performance was deficient, that is, fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client."[7] *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689-92).

---

[7] Pennsylvania's three-part test for evaluating ineffective assistance of counsel claims announced in *Commonwealth v. Peirce*, 527 A.2d 973, 975 (1987), has been held to be the same as the *Strickland* standard. *See*, *e.g.*, *Perez v. Rozum*, 488 F. App'x 656, 659 n.2 (3d Cir. 2012) (not precedential) (listing cases and noting that a Pennsylvania court has adjudicated a *Strickland* claim on the merits when it applies the state-law standard).

To show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

In *United States v. Cronic*, 466 U.S. 648 (1984), a case decided the same day as *Strickland*, the Court identified a narrow exception to the application of *Strickland's* prejudice requirement. Noting that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," the Court concluded that when such circumstances are present, "a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." 466 U.S. at 658, 659 (citations omitted). This presumption of prejudice is sometimes referred to as "*per se* ineffective assistance of counsel." *See*, *e.g.*, *Thomas v. Horn*, 750 F.3d 105, 113 n.3 (3d Cir. 2009). *Davenport v. Diguglielmo*, 215 F. App'x 175 (3d Cir. 2007) (not precedential), identified three situations in which courts should apply the *Cronic* presumed prejudice standard. *Id.* at 182 (citing *Cronic*, 466 U.S. 648; *Bell v. Cone*, 535 U.S. 685, 697 (2002)).

> The first is when there is a "'complete denial of counsel'" at a critical stage in the trial proceedings. *Bell*, 355 U.S. at 695-96, 122 S. Ct. 1843 (quoting *Cronic*, 466 U.S. at 659, 104 S. Ct. 2039). Second are

25

> situations in which a petitioner is
> represented by counsel at trial, but counsel
> "entirely fails to subject the prosecution's
> case to meaningful adversarial testing." *Id.*
> And third, situations at trial where counsel
> could not render competent assistance. *Id.*

215 F. App'x at 182. In the second situation, "*Bell* held if counsel only fails to challenge the prosecutions's case at specific points, to further a reasonable trial strategy, and not in its entirety, then *Cronic* does not apply. *Id.* (citing *Bell*, 535 U.S. at 697; *Haynes v. Cain*, 298 F.3d 375, 380-81 (5th Cir. 2002); *Florida v. Nixon*, 543 U.S. 175, 190-91 (2004)).

Looking now to whether Petitioner fairly presented to State courts the ineffective assistance of counsel claim he asserts in his § 2254 Petition, I must first determine the contours of the claim raised in this Court. Respondents characterize this claim as Petitioner "alleging trial counsel's ineffectiveness with regard to his closing argument under the *Strickland* standard." (Doc. 9 at 20.) Although *Strickland* is the common legal basis for an ineffective assistance of counsel claim, here I cannot assume this is the basis for the claim raised without examining Petitioner's filings in this Court.

In his § 2254 Petition, Petitioner identifies his second ground for relief as follows: "Trial counsel denied petitioner effective assistance of counsel when he placed petitioner at the crime scene and conceded guilt." (Doc. 1-1 at 3.) Petitioner provides two and one-half pages of "supporting facts." (*Id.* at 3-

5.)  He does not identify any legal standard specifically or identify how his claim satisfies the elements of an ineffective assistance of counsel claim.  (*See id.*)  This is not a deficiency in his pleading in that the § 2254 petition form advises the petitioner to supply facts supporting the ground on which he claims he is being held in violation of the Constitution, laws or treaties of the United States but not to argue or cite law.  (*See*, *e.g.*, Doc. 1 at 5.)  In Petitioner's Response to Respondents [sic] Untimely Answer to Petition for Writ of Habeas Corpus (Doc. 14), Petitioner argues that prejudice should be presumed in his case and he specifically cites *United States v. Cronic*, 466 U.S. 648, 658-59 (1984), in support of his assertion.[8]  (Doc. 14 at 24-26.)

---

[8]  This argument is found in the section of Petitioner's brief titled "Prejudice and a fundamental miscarriage of justice."  (Doc. 14 at 17.)  Conflation of issues and less-than-clear argument are apparent throughout Petitioner's filings, but in this area of the law, confusion is not limited to *pro se* filings.  The Third Circuit recently began an opinion encompassing the AEDPA with the following quotation:  "'The whole thing was a very cleverly planned jigsaw puzzle, so arranged that every fresh piece of knowledge that came to light made the solution of the whole more difficult.'" *United States v. Doe*, No. 13-4274, —--F.3d—--, 2015 WL 5131208, at *1 (3d Cir. Sept. 2, 2015) (quoting Agatha Christie, *Murder on the Orient Express*); *see also id.* (referring to the "Odyssean twists and turns of the AEDPA").  Calling the AEDPA a "procedural obstacle course" our Circuit Court has noted that "[t]he labyrinthine complexity of federal habeas review has caused one noted jurist to conclude that AEDPA's 'thicket of procedural brambles' is one of the most difficult legal schemes for an attorney to navigate."  *In re Commonwealth's Motion to Appoint Counsel or Directed to Defender Ass'n of Philadelphia*, 790 F.3d 457, (3d Cir. 2015) (quoting *In re Davis*, 565 F.3d 810, 827 (11th Cir. 2009)). (Barkett, J., dissenting).

I further note that Petitioner cites *Coleman v. Thompson*, 501

Recognizing that his case is distinguishable from those where courts have applied *Cronic* to capital cases, he "insists that the instant case should set a precedent for a new standard of review considering how unique it is." (*Id.* at 26.) In the section of his brief titled "Claim two was []fairly presented to the state superior and supreme court" (Doc. 14 at 28), Petitioner states that "PCRA counsel presented the same issue in his brief to the Superior Court as he raised in his 1925(b) statement" (*id.* at 29). The 1925(b) statement did not cite either *Strickland* or *Cronic* (*see* Doc. 10-18 at 2-3), but the Superior Court brief argument clearly argued ineffectiveness under the *Cronic* standard (Doc. 10-19 at 19-21).

With the objection now considered, Petitioner argues that he has consistently asserted that the *Cronic* standard should be applied to the concession of guilt issue, citing specifically his brief to the Superior Court and his May 13, 2011, brief filed in the PCRA court. (Doc. 20 at 1-2.) In support of his argument that he fairly presented his ineffective assistance of counsel claim in *Cronic* terms, Petitioner also points to the facts that the PCRA

U.S. 722, 746 (1991), in support of his claim that he "established actual prejudice with claim two." (Doc. 14 at 27.) Because the citation to *Coleman* relates to the Court's discussion of cause and prejudice under the procedural default doctrine, I conclude Petitioner's reference to "prejudice" is not made in the context of the second (prejudice) prong of the *Strickland* standard, but rather in the context of the second prong of the "cause and prejudice" basis for excusing procedural default.

court cited the *Cronic* rule in its decision, Respondents recognized Petitioner's *Cronic* argument in their appellate brief, and the Superior Court addressed the merits of his *Cronic* claim in its decision. (Doc. 20 at 1-2; Doc. 35 at 42.) Petitioner also argues that he could not have claimed the PCRA court erred in applying the wrong ineffectiveness standard before it issued its decision. (Doc. 20 at 2.) In Petitioner's Reply to Respondents' Response, Petitioner asserts that "[t]rial counsel's actions in the instant case, must trigger the presumption of prejudice under the *Cronic* standard of review." (Doc. 35 at 21.)

I conclude that Petitioner fairly presented his claim before us now, i.e., that he was denied effective assistance of counsel based on trial counsel's placing him at the crime concession of guilt at closing argument and that the claim should be judged on the *pro se* standard articulated in *Cronic*. The conclusion is based on several considerations. First, Petitioner (who filed his PCRA petition *pro se* and at times proceeded *pro se* in the six years his petition was pending before the PCRA court (*see* Doc. 9 at 7-11)) argued his ineffective assistance of counsel claim based on trial counsel's concession of guilt in terms of *per se* ineffectiveness: in his final brief to the PCRA court on May 13, 2011, Petitioner argues that "[a] lawyer who informs the jury that there is no reasonable doubt that his client committed the predicated crime to felony murder has utterly failed to 'subject the prosecution's case

to meaningful adversarial' scrutiny.  *United States v. Swanson*, 943
F.2d 1070, 1074 (9th Cir. 1991) (quoting *United States v. Cronic*,
466 U.S. at 659 . . . )."  (Doc. 10-14 at 9.)  Not only did
Petitioner cite *Cronic*, but he specifically asserted a circumstance
to which the Supreme Court has determined that *Cronic* may apply.[9]
Thus, Petitioner's final brief to the PCRA court alerted the court
to the factual and legal basis of his ineffective assistance at
closing argument claim.  Second, in the PCRA court's September 28,
2011, Opinion, after identifying the claim of ineffectiveness
related to trial counsel's closing argument and concession of guilt
as Petitioner's "flagship issue in this proceeding," the court set
out relevant closing argument testimony and began its discussion of
the issue with the following: "First, we note that the concession
Mr. Dickey made in argument does not trigger a presumption of
prejudice.  *See United States v. Cronic*, 466 U.S. 648, 653-56

---

    9  I recognize that Petitioner initially identified the
*Strickland* standard as that applicable to the nineteen
ineffectiveness claims raised in his March 15, 2005, *pro se* PCRA
petition.  (*See* Doc. 10-1 at 9.)  Petitioner also referenced
*Strickland* in later filings.  In his March 20, 2008, brief to the
PCRA court, Petitioner cites *Strickland* in relation to his closing
argument ineffectiveness claim (Doc. 10-9 at 9) and references
prejudice as a result of counsel's actions (*id.*), but he also
mentions that counsel, in placing Petitioner at the burglary scene,
"'*Per Se*' so undermined the truth determining process that no
reliable adjudication of guilt or innocence could have taken
place."  (*Id.* at 25.)  In his final brief to the PCRA court wherein
Petitioner cited *Cronic* (Doc. 10-14 at 9, 15), Petitioner also
cites *Strickland* (*id.* at 15), *but not in the context of the
standard applicable to his closing argument ineffectiveness claim*.

(1984). *Commonwealth v. Cousin*, 585 Pa. 287, 301, 888 A.2d 710, 719 (2005)." (Doc. 10-17 at 31-34.) Thus, the PCRA court considered the merits of Petitioner's *Cronic* ineffective assistance of counsel claim. Third, although Petitioner's 1925(b) statement did not identify his closing argument ineffectiveness claim in terms of *Cronic* or *per se* ineffectiveness (*see* Doc. 10-18 at 2), Petitioner's brief clearly did so, and the Superior Court recognized the same (Doc. 10-22 at 5).[10] Furthermore, the Superior Court recognized that the PCRA court had determined that there was no *per se* ineffective assistance of counsel under *Cronic*, a finding with which the Superior Court agreed.[11] (Doc. 10-22 at 5 n.8.) Because the record shows that Petitioner presented the factual and legal basis for his claim that trial counsel was *per se* ineffective when he placed Petitioner at the crime scene and conceded guilt-- i.e., the claim raised with the instant § 2254 petition--in the

---

[10] The Superior Court did not specifically identify or individually consider the 1925(b) errors in the brief discussion portion of its Opinion. (*See* Doc. 10-22 at 5-6.) However, the "Argument" section of Petitioner's brief to the Superior Court focused on the applicability of the *Cronic* standard to Petitioner's closing argument ineffectiveness claim. (Doc. 10-19 at 20-22.)

[11] Again the Superior Court spoke in broad terms and did not discuss the PCRA court's *Cronic* finding in detail. (*See* Doc. 10-22 at 5 n.8.) However, to the extent the PCRA court made its *Cronic* determination in the context of ineffectiveness due to trial counsel's closing argument concession of guilt, it ia a fair assumption that the Superior Court's agreement with the PCRA court relates to this issue.

State courts, I conclude he has "fairly presented" his claim.[12]

Having determined that Petitioner fairly presented his
ineffective assistance of trial counsel claim to the State courts,
I must next consider whether the procedural default doctrine
applies in that the Superior Court did not decide Petitioner's
claim on the merits but rather based on asserted violations of

---

[12] To be clear, this conclusion does not mean that Petitioner
"fairly presented" a *Strickland* ineffective assistance of counsel
claim. Though far from a model of clarity, Petitioner does not
seem to argue otherwise with his "fairly presented" objection––as
discussed above, his focus is entirely on the *Cronic* standard of
review for his closing argument ineffectiveness claim.
Petitioner's 1925(b) statement that "[t]he P.C.R.A. court erred
when it found that Defendant failed to meet his burden of proving
trial counsel's ineffectiveness when trial counsel at closing
argument placed Defendant at the scene of the murder," (Doc. 10-18
at 2) is a generic ineffective assistance of counsel claim. To the
extent it is or could be construed as a *Strickland* claim,
Petitioner did not argue or infer in his brief to the Superior
Court that trial counsel was ineffective under the *Strickland*
standard: the "Statement of Questions Involved" asked only the
question of whether the PCRA court "committed an error of law when
it applied the *Strickland* performance-and-prejudice test" (Doc. 10-
19 ay 6); the "Summary of Argument" asserted only that *Cronic* was
the applicable standard (*id.* at 19); the "Argument" section
centered on why *Strickland* was the wrong standard and *Cronic* the
right one (*id.* at 20-22); and the "Conclusion" stated that "[t]rial
counsel was ineffective *per se*" and "the act of trial counsel in
placing the Appellant at the scene of the murder made during
closing argument triggered the *Chronic* [sic] exception to
*Strickland's* performance-and-prejudice test" (*id.* at 23). Thus,
the Superior Court was not apprised that Petitioner was pursuing a
*Strickland* ineffective assistance of counsel claim. Further,
though not discussed in the Superior Court opinion, under
Pennsylvania Rules of Appellate Procedure, a *Strickland*
ineffectiveness claim would be waived pursuant to Pennsylvania
Rules of Appellate Procedure 2111 and 2116. The effect of this
waiver was thoroughly discussed by Magistrate Judge Mehalchick.
(Doc. 18 at 5-11.) To the extent Petitioner's claim before this
Court could be considered a *Strickland* claim, I agree with
Magistrate Judge Mehalchick's analysis.

state procedural rules.  As set out above, procedural default occurs "when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule." *Rolan*, 680 F.3d at 317.

Here the procedural rules upon which the Superior Court determined that Petitioner had waived his *per se* ineffective assistance of counsel claim are Pennsylvania Rules of Appellate Procedure 302(a) and 1925(b).  (Doc. 10-22 at 5-6.)  Therefore, I look to see if these rules are "independent and adequate."  The Supreme Court has "pointed out that the adequate and independent state ground doctrine applies whenever the state court relies upon such an adequate and independent state ground, even when it goes on to address the federal claim in an alternative holding."[13] *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (citing *Harris v. Reed*, 489 U.S. 255 (1989)).

The Superior Court stated that

> Branthafer claims the PCRA court erred in applying the *Strickland* performance/prejudice test for ineffective assistance of counsel, rather than the *per se* ineffective assistance of counsel rule found in *United States v. Cronic*, *supra*.  However, this issue was not raised before the PCRA court, either in the PCRA petition or in the Pa. R.A.P. 1925(b) statement.  The failure to raise a claim in a

---

[13]  The Superior Court's consideration of the merits of the claim in the margin is not considered for procedural default purposes.  However, it would be a factor in the deference due under § 2254(d) if a merits analysis were warranted.  *See Rolan*, 680 F.3d at 319-21.

> 1925(b) statement results in waiver of that claim on appeal. *See Commonwealth v. Johnson*, 51 A.3d 237, 247 (Pa. Super. Ct. 2012). . . . . Because Branthafer did not claim the *Cronic* rule was applicable in his petition before the PCRA court, he cannot raise that claim now, for the first time on appeal. *See Commonwealth v. Fletcher*, 986 A.2d 759, 794 (Pa. 2009) (failure to raise a claim before the lower court waives issue) Pa.R.A.P. 302(a).

(Doc. 10-22 at 5-6.)

Rule 1925(b) provides the following:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R. App. P. 1925(b). Subsection (b)(4) also provides that

> (i) The Statement shall set forth only those rulings or errors that the appellant intends to challenge.

> (ii) The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.

> . . . .

> (v) Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the

34

> scope of claimed constitutional errors on
> appeal.
>
> . . . .
>
> (vii) Issues not included in the
> Statement and/or not raised in accordance
> with the provisions of this paragraph (b)(4)
> are waived.

Pa. R. App. P. 1925(b)(4).

Though the Superior Court did not provide detailed reasons
for its waiver determination, Petitioner's 1925(b) statement
identified three bases upon which the PCRA court erred--all
related to ineffective assistance of trial counsel and none
indicating that the error was that the PCRA court applied the
wrong standard to the claim which was the only basis of error
presented in Petitioner's brief to the Superior Court. (*See* Doc.
10-18 at 2-3; Doc. 10-19.) Thus, arguably Petitioner did not
"concisely identify each ruling or error" that he intended to
challenge "with sufficient detail to identify all pertinent issues
for the judge." Pa. R. App. P. 1925(b)(4)(v).

The Pennsylvania Superior Court's finding of waiver under
Rule 1925(b) has been found to be an adequate basis to invoke the
procedural default doctrine. *Buck v. Colleran*, 115 F. App'x 526,
527-28 (3d Cir. 2004) (not precedential); *Sidberry v. Fisher*, Civ.
A. No. 11-888, 2015 WL 3866276, at *16 (W.D. Pa. June 23, 2015)
(listing cases) ("Waiver of a claim for failure to comply with the
requirements of Pa. R.A.P. 1925(b) and identify all issues to be

35

reviewed on appeal has been found to be an adequate and independent ground sufficient to invoke the procedural default doctrine.")

The Superior Court alternatively cited Pennsylvania Rule of Appellate Procedure 302(a) (Doc. 10-22 at 6) which states that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." As discussed above, Petitioner did not claim the *Cronic* rule was applicable in his petition (*see* Docs. 10-1, 10-2, 10-3, 10-6); he did, however, claim it was applicable to his closing argument concession of guilt ineffective assistance claim in his May 13, 2011, brief to the PCRA court (Doc. 10-14 at 9, 14).

Rule 302(a) has been found to be an independent and adequate state ground for denying habeas relief. *Thomas v. Sec'y, Pennsylvania Dep't of Corrections*, 495 F. App'x 200, 206 (3d Cir. 2012) (not precedential); *Tai-Nan v. Wilson*, 366 F. App'x 256, 261 (3d Cir. 2009); *Troutman v. Overmyer*, Civ. A. No. 2:14-cv-1592, 2015 WL 1808640, at *12 (E.D. Pa. Apr. 21, 2015) (listing cases) (Rule 302(a) "and similar state procedural waiver rules," have been found to be adequate and independent state rules for purposes of procedural default).

Although Petitioner asserts that the Superior Court incorrectly concluded that he waived his closing argument ineffective assistance of counsel *Cronic* claim, this is clearly an

attack on the State court's state law ruling.  Therefore, absent a

showing that the Superior Court's ruling amounts to a violation of

federal law or presents an "exceptional circumstance," the

conclusion that the grounds asserted for the decision are

"adequate" is unaffected.  *See Rolan*, 680 F.3d at 317; *Branch*,

2009 WL 1089560, at *8.  Because Petitioner has not made such a

showing, Pennsylvania Rules of Appellate Procedure 302(a) and

1925(b) are adequate grounds for the Superior Court's waiver

ruling.[14]  *Rolan*, 680 F.3d at 317-18; *Tillery*, 142 F. App'x at 68;

---

[14]  I recognize some tension exists between the conclusion that
Petitioner fairly presented his closing argument *per se*
ineffectiveness claim and the finding that the state procedural
rules were independent and adequate grounds to invoke the
procedural default doctrine.  This tension is highlighted by the
facts that Rule 302(a) does not require that issues be raised in
the lower court in any particular fashion and Rule 1925(b)(4)(v)
provides that issues identified in the 1925(b) statement will be
deemed to include subsidiary issues raised in the trial court.
This Court's finding that Petitioner raised his closing argument
*per se* ineffectiveness claim in his final brief to the PCRA court
indicates he did not run afoul of the stated requirement in Rule
302(a).  Because Petitioner's closing argument *Cronic per se*
ineffectiveness claim could be construed as a "subsidiary issue" to
the generically stated closing argument ineffectiveness claim in
his 1925(b) statement in which Petitioner cited the pages of the
PCRA opinion encompassing the PCRA court's *Cronic* determination
(*see* Doc. 10-18 at 2 (citing September 28, 2011, Opinion, at 29-32
(Doc. 10-17 at 31-34))), arguably Petitioner did not waive his *per
se* ineffectiveness claim under Rule 1925(b). (Petitioner's
objection on this issue includes the assertion that "[t]he PCRA
court obviously agreed that the 1925(b) statement was sufficiently
specific as the court filed a Memorandum in response to the 1925(b)
statement."  (Doc. 20 at 2.)  Our review of the Docket from the
Court of Common Pleas of Huntingdon County Docket Number CP-31-CR-
0000265-2000 shows that Judge Stewart Kurtz filed a Memorandum on
November 30, 2011.
https://ujsportal.pacourts.us/DocketSheets/CPReports.ashx?docketNum
ber=CP-31-CR-0000265-2000.  However, this document is not part of
the record in the case before us.)

*Branch*, 2009 WL 1089560, at *8.

Having found that the State court's judgment was based on independent and adequate procedural rules, the procedural default doctrine applies to Petitioner's claim and I only reach the merits of his claim if he shows cause for the default and resulting prejudice or a fundamental miscarriage of justice will result if the court does not consider the merits. *Coleman*, 501 U.S. at 731.

Petitioner points to PCRA counsel's ineffectiveness as cause for the default, asserting that *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), should apply to his case. (Doc. 20 at 6-7.) *Martinez* held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance

---

Despite the general rule that the "adequate" inquiry does not encompass a determination regarding the correctness of the state court decision, *see*, *e.g.*, *Tillery*, 142 F. App'x at 68, on occasion the Third Circuit Court appears to have considered the correctness of the State court's application of Rule 1925(b), *see*, *e.g.*, *Buck*, 115 F. App'x at 528 (determining procedural default doctrine applied after stating "*we see no error* in the Pennsylvania Superior Court judgment that petitioner's two Fifth Amendment issues were waived" pursuant to Rule 1925(b) (emphasis added). Adequacy of the state procedural rule may also be questioned, as in *Rolan*, based on the "'exhorbitant application of a generally sound rule.'" 680 F.3d at 317-18 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)) (concluding petitioner who had "substantially, if imperfectly" complied with the requirements of Rule 1925(b) had not procedurally defaulted claim at issue).

Despite these observations, as concluded in the text, Petitioner provides no basis to conclude that his case falls into the *Rolan/Lee* exceptional category or the situation discussed in *Branch*. In the absence of such a showing, there is no reason in this case to intrude on the considerations of comity and finality which underpin § 2254 habeas review.

at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1320. Referring to its holding as "a narrow exception" to an unqualified statement made in *Coleman*, the Court explained the basis for its decision: "To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id.* at 1315. As discussed by Magistrate Judge Mehalchick, the Third Circuit has determined that *Martinez* applies in Pennsylvania. (Doc. 18 at 9 (citing *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014)).) She also correctly concluded that under *Martinez* procedural default may only be excused when caused by ineffective assistance of counsel during the initial PCRA proceedings; it does not apply to claims of ineffective assistance of counsel during appellate collateral proceedings. (Doc. 18 at 9-10.) Our Circuit Court's recent decision in *Norris v. Brooks*, 794 F.3d 401 (3d Cir. 2015), confirmed the limited application of *Martinez*: "Most importantly, the Court stated that the exception applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings." 794 F.3d at 404 (citing *Martinez*, 132 S. Ct. at 1320).

Attorney William Tressler was Petitioner's counsel during initial review and appellate PCRA proceedings. Judge Stewart

Kurtz, presiding over Petitioner's collateral proceedings in the Court of Common Pleas of Huntingdon County, issued his Order and Opinion on September 28, 2011, denying Petitioner's PCRA petition. (Doc. 10-17.)  On October 26, 2011, Mr. Tressler was appointed for Mr. Branthafer to prosecute his appeal, and Mr. Tressler filed the Notice of Appeal on October 27, 2011.[15]  On October 27, 2011, Judge Kurtz ordered the filing of a 1925(b) statement, and Mr. Tressler filed the statement on November 17, 2011.[16]  Thereafter, Mr. Tressler filed the Brief for Appellant in the Superior Court of Pennsylvania.  (Doc. 10-19.)  This timeline shows that any waiver of claims in the Superior Court based on Mr. Tressler's failure to identify the *Cronic* claim in the 1925(b) statement occurred when Mr. Tressler was functioning as appellate PCRA counsel and, therefore, cannot provide cause for the default of his ineffective assistance of trial counsel claim.

As with many aspects of this case, the waters are muddied by less than lucid presentation of issues in the PCRA court and the Superior Court's limited explanation of its procedural findings. The Superior Court's reliance on Rules 302(a) and 1925(b) means that Petitioner's *Cronic* claim was first waived by PCRA counsel because it was not raised in a petition before the PCRA court and it was again waived by appellate counsel when it was not

---

[15] https://ujsportal.pacourts.us/DocketSheets/CPReports.ashx?docketNumber=CP-31-CR-0000265-2000.

[16] *Id.*

40

identified in the 1925(b) statement. Because I am presented with a Superior Court opinion that could support attorney error of PCRA initial review counsel *and* PCRA appellate counsel, the way forward is not clear. At the appellate level, Mr. Wheeler, functioning as appellate counsel, could not have saved his error of not sufficiently raising a *Cronic* claim when he was functioning as PCRA counsel, i.e., it was too late to go back and amend the petitions and briefs previously filed. Therefore, even if Mr. Wheeler had included a *Cronic* claim in his 1925(b) statement, the *Cronic* claim would have been waived pursuant to Rule 302(a). In this scenario, default was caused by PCRA counsel on initial review.[17] Because appellate PCRA counsel could not correct the error of initial review PCRA counsel, appellate counsel's alleged error of not including a *Cronic* claim in his 1925(b) statement was just icing on the cake.[18] Therefore, although the *Martinez* holding is a narrow one, in this case I will proceed, assuming *arguendo* that *Martinez* would recognize that error in this case was

---

[17] Similarly, if the Superior Court found that a *Cronic* claim had been sufficiently raised in the PCRA court, it may have been more likely the Superior Court would have read Petitioner's closing argument ineffectiveness error to encompass a *Cronic* claim under Rule 1925(b).

[18] While it may be possible to imagine scenarios in which skilled appellate PCRA counsel could have presented 1925(b) claimed errors in a way that would have made a finding of 302(a) waiver of a *Cronic* claim less likely, such scenarios are beside the point now and the fact that Mr. Wheeler functioned as both initial review and appellate PCRA counsel made it highly improbable that he would have been in a position to cast aspersion on his earlier filings.

attributable to initial review PCRA counsel.[19]

Where a petitioner claims PCRA initial review counsel caused
the default of his underlying ineffective assistance of counsel
claim, *Martinez* requires that the prisoner show that counsel in
the collateral proceeding was ineffective under the standards of
*Strickland*. *Martinez*, 132 S. Ct. at 1318 (citing *Strickland*, 466
U.S. 668). To overcome the default, *Martinez* also requires that

---

[19] In so doing, I distinguish this case from *Norris*, in which
the Third Circuit rejected the petitioner's argument that his claim
was defaulted at the PCRA initial review proceeding due to his
attorney's inadequate presentation of the claim rather than on
collateral appeal where his attorney did not present, and thus
waived, the claim. 794 F.3d at 405. In *Norris*, PCRA initial-
review counsel intentionally abandoned the ineffective assistance
of counsel claim when he appealed the PCRA court's decision. 794
F.3d at 402-03. When the petitioner, functioning *pro se*, later
raised the claim in the Superior Court, the Superior Court
concluded it had been waived because it was not included in the
petitioner's counseled brief. *Id.* at 403. The case eventually
made its way to the Third Circuit where the issue of the
applicability of *Martinez* was considered and rejected because the
issue was waived on collateral appeal. *Id.* Petitioner argued that
the ineffective assistance of counsel claim was actually defaulted
at the initial-review PCRA proceeding because counsel at the
initial review stage inadequately presented the claim to the Court
of Common Pleas. 794 F.3d at 405. One reason cited for rejecting
Petitioner's argument was that the Circuit Court was "unconvinced
by Norris's conflation of shoddy advocacy and procedural default."
*Id.* at 405.

Although Attorney Wheeler's advocacy during initial PCRA
review could be considered shoddy, it had a greater impact than the
shoddy advocacy in *Norris*: in *Norris*, the Superior Court concluded
the pertinent issue had been waived *only* because it was not
included in the appellate brief; the Superior Court in this case
rejected the pertinent claim in part because the court determined
it was waived when not presented to the PRCA court. Therefore,
*Norris's* rejection of the petitioner's argument does not indicate
that a similar result is warranted here.

the "prisoner demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Our Circuit Court has stated that, by citing *Miller-El*, the Court suggested that courts should apply the standard for issuance of a certificate of appealability to determine what constitutes a "substantial" claim. *Jones v. Pa. Bd. of Probation and Parole*, 492 F. App'x 242, 244-45 (3d Cir. 2012) (not precedential). Under the standard announced in *Miller-El*, "a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The determination requires an overview, not full consideration of the factual and legal bases of the claims. *Id.*

Petitioner cannot show that his underlying ineffective assistance of counsel claim (that his trial counsel was *per se* ineffective pursuant to *Cronic* because he placed him at the crime scene and conceded guilt during closing argument) has merit because *Strickland*, not *Cronic*, has been held to be the governing standard where counsel concedes guilt in a capital case. *Florida v. Nixon*, 543 U. S. 175, 198-91 (2004); *Davenport v. Diguglielmo*,

215 F. App'x 175, 182 (3d Cir. 2007). Although he attempts to do so (*see*, *e.g.*, Doc. 14 at 25-26), Petitioner has failed to distinguish his case in any meaningful way.[20] His insistence "that the instant case should set a precedent for a new standard of review considering how unique it is" (Doc. 14 at 26) is unavailing in that he is essentially arguing that the State courts should have extended *Cronic* to apply to his case. "Section 2254(d)(1) 'does not require state courts to extend . . . precendent or license federal courts to treat the failure to do so as error.'" *Washington v. Sec'y of Pennsylvania Dep't of Corrections*, ---F.3d---, 2015 WL 5103330, at *8 (3d Cir. Sept. 1, 2015) (quoting *White v. Woodall*, ---U.S.---, 134 S. Ct. 1697, 1706 (2014) and discussing difference between applying rule and extending it). Therefore, habeas error cannot rest on Petitioner's assertion that the State courts should have applied *Cronic* to his case and his ineffective assistance of counsel claim based on *Cronic* is not a substantial claim.[21]

---

[20]  Petitioner has not shown that counsel's claimed errors at closing argument are equivalent to the situations cited in *Davenport* where the *Cronic* standard should be applied. *See supra* pp. 25-26.

[21]  With this conclusion, I note that the narrow basis of the claim before us--what standard should apply to Petitioner's closing argument ineffective assistance of counsel claim--does not require an analysis of the claim under the *Strickland* standard. However, if Petitioner's underlying ineffective assistance of counsel claim were reviewed under the *Strickland* standard, I would find it would not pass the *Martinez* "substantial claim" test. The performance prong of the *Strickland* standard may require more analysis than is

contemplated under *Martinez/Miller-El* due to Petitioner's allegations and evidence related to Mr. Dickey's investigation, preparation of the case, and closing argument strategy. *Strickland*, 466 U.S. 690-91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Collins*, 742 F.3d at 547 ("the question of whether counsel had a reasonable strategy necessarily includes the question of whether that strategy was reasonably arrived at"); *Rolan*, 445 F.3d at 682 ("Only choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity."). However, assuming *arguendo* that Petitioner could satifsy the objective reasonableness prong, an overview of the prejudice prong shows that Petitioner has not made out a substantial claim of ineffectiveness.

Given that Petitioner acknowledges in his Petition that three witnesses placed Petitioner at the crime scene and their testimony was not contradicted at trial (Doc. 1-1 at 3-5), full consideration of the factual and legal basis of Petitioner's closing argument ineffective assistance of counsel claim is not necessary to conclude that a substantial claim of prejudice based on closing argument error is not supported. This evidence alone indicates there was not a reasonable probability that the outcome of the trial would have been different but/for Mr. Dickey's placing Petitioner at the crime scene and conceding his guilt to burglary. *Cedeno v. United States*, 455 F. App'x 241, 244 (3d Cir. 2011) (not precedential) (a petitioner must show "that his counsel's deficiencies caused prejudice such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (quoting *Strickland*, 466 U.S. at 694).

Petitioner's inferences that he was prejudiced by Mr. Dickey's performance are unavailing. Petitioner infers prejudice with his argument that if counsel "had sought an outright acquittal, like petitioner requested counsel to do when he was hired, the outcome of the trial would have been different." (Doc. 14 at 25.) Petitioner adds that

> he was not guilty because he was not present
> and testified at the first evidentiary
> hearing as to where he was and what he did
> during the night of the murder and was
> completely willing to offer that evidence to
> counsel, had counsel ever met with

45

Because Petitioner has not presented a substantial claim of ineffectiveness of trial counsel based on trial counsel's closing argument, the narrow exception to the *Coleman* rule carved out by *Martinez* would not provide cause for the default in this case.

Having found that for *Martinez* purposes that Petitioner has not presented a "substantial claim" of ineffective assistance of trial counsel based on counsel's asserted closing argument errors,

---

> petitioner, responded to his mail or returned his calls. A different course was available for counsel to choose.

(Doc. 14 at 25.) In his Petition, Petitioner also points to statements found during (post-trial) discovery in which Dustin Christoff and Timothy Skipper, two witnesses who testified at trial that Duvall admitted to them that he was the shooter, also stated that Duvall told them Petitioner was not present at the crime—information not elicited at trial. (Doc. 1-1 at 5.) Petitioner notes that Mr. Dickey had these statements before the trial and they were not admitted into evidence at the PCRA level because PCRA counsel failed to subpoena the authors of the documents. (*Id.*)

The problem is that Petitioner's cited omissions have not been presented to this Court as bases for trial counsel's ineffectiveness. While Petitioner now asserts that his trial counsel did not present evidence which would have supported an argument that he was not at the scene, a claim of ineffectiveness for failing to present exculpatory witness testimony was not raised before the Superior Court nor is it before us now. Similarly, a claim of ineffectiveness based on Petitioner's assertion that more thorough investigation and presentation of an alibi at trial could have resulted in a different outcome is not before us. Although Petitioner states he "will demonstrate cumulative error to show counsel completely denied Petitioner assistance" (Doc. 14 at 14; Doc. 35 at 21), Petitioner did not raise a claim of cumulative error either in State court or in the Petition before this Court. *Collins*, 742 F.3d at 543, ("a claim of cumulative error must be presented for state courts before it may provide a basis for habeas relief").

further analysis is somewhat academic.  However, I will address
Petitioner's third objection in the interest of completeness.

**b.    Fundamental Miscarriage of Justice**

Petitioner asserts that "Denial of Review of the PCRA
Court's decision to deny ineffective assistance of trial counsel
would be a Fundamental Miscarriage of Justice."  (Doc. 20 at 7.)
The text following this heading is rambling but refers mainly to
his claim that trial counsel was ineffective for placing him at
the scene and conceding guilt during his closing argument.  (Doc.
20 at 7-10; Doc. 1-1 at 3.)

As set out above, procedural default may also be excused,
allowing the Court to reach the merits of the procedurally
defaulted claim, if a petitioner can show a "fundamental
miscarriage of justice."  *Schlup*, 513 U.S. at 326.  As explained
in *Goldblum*, a petitioner

> faces a very high burden with respect to this
> assertion.  The Supreme Court has instructed
> us that our authority to excuse the failure
> to present a claim in the first petition,
> absent "cause" and "prejudice," only should
> be exercised in a "narrow class of cases,"
> i.e., in "extraordinary instances when a
> constitutional violation has probably caused
> the conviction of one innocent of the crime."
> *McCleskey*, 499 U.S. at 494, 111 S. Ct. at
> 1470.  "To establish the requisite
> probability, the petitioner must show that it
> is more likely than not that no reasonable
> juror would have convicted him in light of
> the new evidence."  *Schlup*, 513 U.S. at 327,
> 115 S. Ct. at 867.

510 F.3d at 225.  This is a two-step inquiry which requires first

47

that the court "decide whether the petitioner has presented new reliable evidence not presented at trial," and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Goldblum*, 510 F.3d at 225 (internal quotations omitted). *Schlup* noted that "new reliable evidence" could be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  513 U.S. at 324.

In his Petition, Petitioner asserted that he "testified at the evidentiary hearing that he was not present at the crime scene and never participated in the murder whatsoever."  (Doc. 1-1 at 5.)  In his responsive filing to Respondents' answer, Petitioner states that he "clearly established actual prejudice with claim two, . . . and if petitioner loses forever such an issue . . . would absolutely be a fundamental miscarriage of justice."  (Doc. 14 at 27 (citing *Coleman*, 501 U.S. at 746; *Schlup*, 513 U.S. at 314).)  With his objection, Petitioner does not discuss or attempt to show he has made the requisite showing.  (*See* Doc. 20 at 7-10.)

Petitioner's "fundamental miscarriage of justice" argument fails because he has not presented "new reliable evidence"--he presents no exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.  His alibi is not supported by this type of evidence and the alibi is

contradicted by information given to Ohio officers.[22]  Petitioner's

reference to statements made by Dustin Christoff and Timothy

Skipper that Duvall admitted that Petitioner was not at the scene

(*see*, *e.g.*, Doc. 1-1 at 5), are not eyewitness accounts and lack

any indicia of reliability as presented to this Court.[23]

Because Petitioner has not made the requisite fundamental

miscarriage of justice showing, procedural default cannot be

---

[22]  Evidence of record shows that the alibi Petitioner provided
at the May 15, 2006, PCRA hearing is contradicted by evidence
presented at trial as reviewed in the PCRA Opinion of September 28,
2011, and summarized in the prosecutor's closing argument.  In a
statement given to Troopers Joseph Pierotti and John Lawler on
April 22, 2000, Petitioner told the officers that he had been in
Cleveland on April 17th and returned to York via bus on the 18th.
(Doc. 10-17 at 13.)  He also told the officers that he stayed at
the York Inn on Best Street and returned to Cleveland on April 20th.
(*Id.*)  Both the inn and address proved to be fictitious.  (*Id.*)
During his closing argument, the prosecutor cited several problems
with the story Petitioner gave to the Cleveland officers, giving
examples of how his story was contradicted by evidence presented at
trial.  (Doc. 9-22 at 14-15 (N.T. p. 773-74).)  At the PCRA
hearing, Petitioner testified that he went to Cleveland on April
16th with Tommy Duvall the driver, "somebody that drives a red
Camaro"–it was a drive out and Petitioner got back to York about
3:30 or 4:00 o'clock in the morning on April 17th.  (Doc. 10-5 at
21-22.)  He testified that he and Tommy went home at that point and
he did not see Tommy again until 3:30 or 4:00 on the morning of the
18th when Tommy picked him up near Petitioner's house after calling
him that he was on his way to York.  (*Id.* at 22.)  Clearly, the
alibi provided at the PCRA hearing is not consistent with the
evidence presented at trial.

[23]  Documents submitted in this case show that three
individuals, Dustin Christoff, Timothy Skipper, and Marlon Gunby,
provided statements to Mr. Ellis in which they indicate they were
told by either Mr. Duvall or Mr. Muckle that Petitioner was not at
the scene.  (Doc. 10-10 at 20-24, 28-30.)

49

excused on this basis.

### III. Conclusion

For the reasons discussed above, we concur with Magistrate Judge Mehalchick that this Petitioner is properly denied and there is no basis for the issuance of a certificate of appealability. (*See* Doc. 18 at 10.) We adopt the Report and Recommendation as modified. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: September 22, 2015